No. 23-30431

IN THE
# United States Court of Appeals
## for the Fifth Circuit

**STEPHEN M. GRUVER, INDIVIDUALLY AND ON BEHALF OF MAXWELL
R. GRUVER; RAE ANN GRUVER, INDIVIDUALLY AND ON BEHALF OF
MAXWELL R. GRUVER,**

**Plaintiffs - Appellees**

v.

**ALLSTATE INSURANCE COMPANY OF CANADA,
INCORPORATED,**

**Defendant - Appellant**

---

**On Appeal from the
United States District Court for the Middle District of Louisiana**
Civil Action No. 3:18-cv-772

---

**PRINCIPAL BRIEF OF PLAINTIFFS-APPELLEES**,
Stephen M. Gruver, individually and on behalf of Maxwell R. Gruver;
Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver

---

Jonathon N. Fazzola
The Fierberg National Law Group
201 East 17th Street, Suite A
Traverse City, MI  49684
Telephone: (231) 933-0180

Donald J. Cazayoux, Jr.
J. Lane Ewing, Jr.
Cazayoux Ewing, LLC
257 Maximilian Street
Baton Rouge, LA  70802
Telephone: (225) 650-7400

**Counsel for Plaintiffs - Appellees**

———————————————————

**Case No. 23-30431**

———————————————————

**STEPHEN M. GRUVER, INDIVIDUALLY AND ON BEHALF OF MAXWELL
R. GRUVER; RAE ANN GRUVER, INDIVIDUALLY AND ON BEHALF OF
MAXWELL R. GRUVER,**

**Plaintiffs - Appellees**

**v.**

**ALLSTATE INSURANCE COMPANY OF CANADA,
INCORPORATED,**

**Defendant - Appellant**

———————————————————

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following
listed persons and entities as described in the fourth sentence of Fifth
Circuit Rule 28.2.1 have an interest in the outcome of this case. These
representations are made in order that the judges of this court may
evaluate possible disqualification or recusal.

1) **Defendant-Appellant:**

Allstate Insurance Company of Canada, Incorporated

2) **Counsel for Defendant-Appellant:**

Paul M. Donovan
James L. Donovan, Jr.

Donvan & Lawler, APLC

**3) <u>Plaintiffs-Appellees</u>:**

Stephen M. Gruver, individually and on behalf of Maxwell R. Gruver, deceased,

and

Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver, deceased

**4) <u>Counsel for Plaintiffs-Appellees</u>:**

Jonathon N. Fazzola
The Fierberg National Law Group, PLLC

Donald J. Cazayoux, Jr.
J. Lane Ewing, Jr.
Cazayoux Ewing, LLC

**5) <u>Other Interested Parties</u>:**

Ryan M. Isto

Respectfully submitted,

/s/ Jonathon N. Fazzola
Jonathon N. Fazzola
*Attorney of Record for Plaintiffs-Appellees Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs-Appellees Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of their deceased son, Maxwell R. Gruver (collectively, the "Gruvers"), respectfully submit that oral argument is not needed because: (1) this appeal is frivolous; and (2) the facts and legal arguments are adequately presented in the briefs and record, and the decisional process will not be significantly aided by oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................iii

TABLE OF AUTHORITIES ...............................................................vi

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............. 1

STATEMENT OF THE CASE .............................................................. 3

SUMMARY OF THE ARGUMENT ...................................................... 15

ARGUMENT .................................................................................... 19

    I.    Allstate Canada Waived And Categorically Failed To Prove
        An Entitlement To A Settlement Credit ............................. 19

        A.    Standards of Review ................................................ 19

                1.    Rule 59(e) Motions .............................................. 19

                2.    Review of a District Court's Evidentiary
                      Rulings ............................................................ 21

        B.    Allstate Canada Waived Any Settlement
              Credit-Based Affirmative Defense ............................. 21

        C.    Allstate Canada Has Not Proven It Was Entitled to a
              Settlement Credit ....................................................... 24

    II.    The Policy Exclusions Allstate Canada Relies On Are
        Inapplicable ..................................................................... 34

        A.    Allstate Canada Failed to Preserve the Applicability of
              the Exclusions for Appellate Review ......................... 35

        B.    Allstate Canada's Attempts to Rewrite the Exclusions
              Confirms They Are Inapplicable ................................. 36

        C.    Allstate Canada Did Not – And Cannot – Show that
              Either Exclusion Applies ............................................ 39

                1.    Canadian Law Governs the Interpretation of the
                      Exclusions .......................................................... 39

2.    Allstate Canada Had the Burden of Proving the Exclusions Undisputedly Applied.......................42

3.    Under Canadian Law and the Undisputed Facts, the "Intentional or Criminal Acts or Failure to Act" Exclusion Does Not Apply...........................43

4.    Under Canadian Law and the Undisputed Facts, the "Abuse, Molestation, or Harassment" Exclusion Does Not Apply .................................51

5.    At a Minimum, the "Abuse, Molestation, or Harassment" Exclusion Is Ambiguous and Must Be Construed Against Allstate Canada .............54

III.    The District Court Conclusively Resolved The Issue Of Insurance Coverage In the Gruvers' Favor Before Trial .....56

IV.    The District Court's Partial Dismissal Order Did Not Extinguish Isto's "Personal Liability" .................................61

CONCLUSION ........................................................................63

CERTIFICATE OF SERVICE................................................65

CERTIFICATE OF COMPLIANCE.......................................66

# TABLE OF AUTHORITIES

## Cases

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*,
    776 F.3d 321 (5th Cir. 2015) ........................................................ 58

*Acadian Diagnostic Labs., L.L.C. v. Quality Toxicology, L.L.C.*,
    965 F.3d 404 (5th Cir. 2020) ........................................................ 24

*Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*,
    942 F.3d 682 (5th Cir. 2019) .................................................. 31, 32

*Anderson v. Oliver*,
    97-721 (La. App. 3 Cir. 01/07/98), 705 So. 2d 301 ........................ 40

*Binh Hoa Le v. Exeter Fin. Corp.*,
    990 F.3d 410 (5th Cir. 2021) .................................................. 36, 62

*Black v. J.I. Case Co.*,
    22 F.3d 568 (5th Cir. 1994) .......................................................... 35

*Blessey Marine Servs.v. Jeffboat, L.L.C.*,
    771 F.3d 894 (5th Cir. 2014) .................................................. 35, 36

*Breland v. Schilling*,
    550 So. 2d 609 (La. 1989) ............................................ 42, 43, 55, 56

*Calpetco 1981 v. Marshall Exploration, Inc.*,
    989 F.2d 1408 (5th Cir. 1993) ...................................................... 57

*Cazamias v. Devon Energy Prod. Co., L.P.*,
    661 F. App'x 817 (5th Cir. 2016) .................................................. 61

*Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*,
    No. H-11-1968, 2013 U.S. Dist. LEXIS 192660
    (S.D. Tex. April 3, 2013)............................................................... 25

*Curry v. Taylor*,
  40,185 (La. App. 2d Cir. 9/21/05), 912 So. 2d 78 ............................ 42

*Delta Seaboard Well Serv's v. Am. Int'l Specialty Lines Ins. Co*,
  602 F.3d 340 (5th Cir. 2010) ......................................................... 36

*Douglass v. United Services Auto. Assoc.*,
  79 F.3d 1415 (5th Cir. 1996) (en banc) ......................................... 23

*Dukes v. Declouette*,
  2010-45 (La. App. 1st Cir. 6/11/10), 40 So. 3d 1231 ........................ 3

*Dupree v. Younger*,
  143 S.Ct. 1382, 1389 (2023) ......................................................... 35

*Ervin v. Sprint Communs. Co. LP.*,
  364 F. App'x 114 (5th Cir. 2010) ................................................... 20

*Evans v. Ford Motor Co.*,
  484 F.3d 329 (5th Cir. 2007) ......................................................... 58

*F.D.I.C. v. Massingill*,
  24 F.3d 768 (5th Cir. 1994) ........................................................... 57

*First Am. Bank v. First Am. Transp. Title Ins. Co.*,
  585 F.3d 833 (5th Cir. 2009) ......................................................... 35

*Forbush v. J.C. Penny Co.*,
  98 F.3d 817 (5th Cir. 1996) ...................................................... 22-23

*Francioni v. Hartford Cas. Ins. Co.*,
  No. 15-528, 2017 U.S. Dist. LEXIS 36977
  (M.D. La. Mar. 15, 2017) ......................................................... 42, 51

*Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C.*,
  546 F. App'x 458 (5th Cir. 2013) .............................................. 21-22

*Gasquet v. Commercial Union Insurance Company*,
    391 So. 2d 466 (La. Ct. App. 1980)................................. 5, 29, 30, 31

*Holcomb v. Universal Ins. Co.*,
    93-1424 (La. App. 3 Cir. 6/1/94), 640 So. 2d 718 ..................... 40-41

*Levy v. Phillips & Jordan, Inc.*,
    No. 08-5065, 2011 U.S. Dist. LEXIS 70114
    (E.D. La. June 29, 2011)................................................. 41

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ........................................ 36

*LSREF2 Baron, L.L.C. v. Tauch*,
    751 F.3d 394 (5th Cir. 2014) ........................................ 23

*Macy v. Whirlpool Corp.*,
    613 F. App'x 340 (5th Cir. 2015) .................................... 21

*Marseilles Homeowners Condo. Ass'n v. Fid. Nat'l Ins. Co.*,
    542 F.3d 1053 (5th Cir. 2008) ....................................... 20

*MCI Commc'ns Servs., Inc. v. Hagan*,
    641 F.3d 112 (5th Cir. 2011) ........................................ 21

*Miller v. Wladyslaw Estate*,
    338 F. App'x 454 (5th Cir. 2009) .................................... 33

*Netto v. Atl. Specialty Ins. Co.*,
    929 F.3d 214 (5th Cir. 2019) ...................................... 34, 35

*Petro Harvester Operating Co., L.L.C. v. Keith*,
    954 F.3d 686 (5th Cir. 2020) ........................................ 24

*RSUI Indemnity Co. v. American States Ins. Co.*,
    127 F. Supp. 3d 649 (E.D. La. 2015) ................................ 32

*Salomon v. Equitable Life Assurance Soc'y of U.S.*,
    202 So. 2d 329 (La. 1943) ........................................... 43

*Scottsdale Ins. Co. Logansport Gaming, L.L.C.*,
    556 F. App'x 356 (5th Cir. 2014) .................................................... 43

*Simon v. United States*,
    891 F.2d 1154 (5th Cir. 1990) ...................................................... 20

*Smith v. Matthews*,
    61 So. 2d 1377 (La. 1993) ............................................................. 43

*Snell v. Stein*,
    259 So. 2d 876 (La. 1972) ............................................................. 42

*Sumrall v. Bickham*,
    2003-1252 (La. App. 1st Cir. 9/8/04), 887 So. 2d 73 ...................... 3, 62

*Templet v. HydroChem Inc.*,
    367 F.3d 473 (5th Cir. 2004) ........................................................ 20

*Thomas v. PFG Transco, Inc.*,
    No. 4:17-cv-007856, 2020 U.S. Dist. LEXIS 211080
    (E.D. Tex. Nov. 10, 2020) ............................................................. 25

*Transtexas Gas Corp.*,
    303 F.3d 571 (5th Cir. 2002) ........................................................ 20

*Tunstall v. Stierwald*,
    2001-1765 (La. 2/26/02), 809 So. 2d 916 ....................................... 42

*United States v. Calverley*,
    37 F.3d 160 (5th Cir. 1994) (en banc) ............................................ 23

*United States v. Davis*,
    308 F. App'x 851 (5th Cir. 2009) .................................................... 21

*United States v. Duffaut*,
    314 F.2d 203 (5th Cir. 2002) ........................................................ 21

*United States v. Estes*,
    994 F.2d 147 (5th Cir. 1993) ........................................................ 21

*United States v. Graves,*
    5 F.3d 1546 (5th Cir. 1993) ................................................... 21

*Vaughner v. Pulito,*
    804 F. 2d 873 (5th Cir. 1986) ........................................ 60-61

*Waltman v. Int'l Paper Co.,*
    875 F.2d 468 (5th Cir. 1989) ................................................ 20

*Whitman v. Louisiana Farm Bureau Cas. Ins. Co.,*
    45,199 (La. App. 2d Cir. 4/14/10), 34 So. 3d 1104 ............................. 42

*Woodfield v. Bowman,*
    193 F.3d 354 (5th Cir. 1999) ....................................... 23, 40

**Canadian Cases**

*Co-operators Gen. Ins. Co. v. Kane,*
    2017 BCSC 1720 (B.C.S.C.) ..................................... 53, 54

*Dube v. BCCA Ins. Corp.,*
    2012 BCSC 1958 (B.C.S.C.) ..................................... 53, 54

*Durham Dist. Sch. Bd. v. Grodesky,*
    2012 ONCA 270 (Court of Appeal for Ontario) ...................... 44, 45

*Eichmanis v. Wawanesa Mut. Ins. Co.,*
    2007 ONCA 92 (Court of Appeal for Ontario) .................. 44, 45, 50

*Ledcor Constr. Ltd. v. Northbridge Indemnity Ins. Co.,*
    2016 SCC 37 (S.C.C.) ................................................ 42, 51

*Non-Marine Underwriters, Lloyd's of London v. Scalera,*
    2000 1 S.C.R. 551 (S.C.C.) ..................................... *passim*

*Progressive Homes Ltd. v. Lombard General Ins. Co. of Canada,*
    2010 2 S.C.R. 245 (S.C.C.) ..................................... 42, 51

## Statutes

La. Civ. Code art. 2074 ............................................................. 55

La. Civ. Code art. 2315 ............................................................. 10

La. Rev. Stat. § 14:40.8 ....................................................... 48, 55

La. Rev. Stat. § 17:1801 .................................................. 48, 55, 56

La. Rev. Stat. § 22:1269 ............................................................ 3

## Rules

Fed. R. Civ. P. 8(c) ................................................................ 22

Fed. R. Civ. P. 44.1 ............................................................... 41

Fed. R. Civ. P. 50(a) .............................................................. 58

Fed. R. Civ. P. 56(a) .............................................................. 35

Fed. R. Civ. P. 59(e) ....................................................... *passim*

Fed. R. Evid. 408(a) .............................................................. 28

Fed. R. Evid. 801 ................................................................. 28

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Whether the district court abused its discretion in denying
    Allstate Canada's Rule 59(e) motion when Allstate Canada waived
    a settlement credit-based affirmative defense, failed to oppose the
    Gruvers' motion *in limine* to exclude arguments and evidence of a
    purported settlement credit at trial, and failed to prove that it was
    entitled to any credit before, during, or after trial.

2.  Whether Allstate Canada waived the right to seek review of the
    district court's denial of its summary judgment motion by failing
    to renew the exclusion-based arguments on which it was based
    through a Rule 50 motion during or after trial.

3.  Whether, even if Allstate Canada had not waived the right to seek
    review of the district court's denial of its summary judgment
    motion, Allstate Canada established there was no genuine issue as
    to any material fact and it was entitled to judgment as a matter of
    law on the issue of whether exclusions in the policy of insurance
    under which Ryan M. Isto was undisputedly insured excluded
    coverage for the Gruvers' claims.

4.    Whether the district court abused its discretion in denying

Allstate Canada's motion for a directed verdict at trial on the issue

of insurance coverage when the district court had already resolved

that issue, as a matter of law, in the Gruvers' favor on summary

judgment.

## STATEMENT OF THE CASE

On August 16, 2018, the Gruvers initiated a civil action in the

U.S. District Court for the Middle District of Louisiana against

numerous defendants, including Ryan M. Isto, for their involvement in

the tragic, September 14, 2017, hazing-related death of their beloved

son, Max. ROA.50-114. On June 23, 2020, with leave of court, the

Gruvers filed a Second Amended Complaint, which added as a

defendant Allstate Insurance Company of Canada, Incorporated

("Allstate Canada") as Isto's insurer. ROA.2099-2152. The Gruvers

asserted a claim directly against Allstate Canada pursuant to the

Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269,[1] alleging that

Allstate Canada was liable jointly and *in solido* with Isto. ROA.2106.

The Gruvers alleged that Allstate Canada issued an insurance

---

[1] The Louisiana Direct Action Statute provides an "injured person or his survivors or heirs" a "direct right of action" against the insurer of an alleged tortfeasor, which can be brought "against the insurer alone, or against both the insured and insurer jointly and in solido." La. Rev. Stat. § 22:1269(B)(1). Consistent with the statute, "Louisiana law has consistently held that a liability insurer and its insured are co-debtors in solido." *Dukes v. Declouette*, 2010-45, p. 6 (La. App. 1st Cir. 6/11/10), 40 So. 3d 1231, 1235 (citing *Sumrall v. Bickham*, 2003-1252, p. 7 (La. App. 1st Cir. 9/8/04), 887 So. 2d 73, 77, *writ denied*, 2004-2506 (La. 1/7/05), 891 So. 2d 696).

policy (the "Policy") that "provided coverage to Defendant Isto, as an insured under the policy, for legal liability arising out of his personal actions anywhere in the world." ROA.2036. The Gruvers further alleged that the Policy "covers all acts of negligence by Defendant Isto alleged herein, and the [Policy] was in full force and effect at all relevant times herein." *Id.*

Those alleged acts of negligence by Isto, who was a member of the LSU fraternity Max was pledging when he died, included failing "to prohibit or stop the hazing and misconduct that harmed and imperiled Max," or obtain medical help for Max after he became "incapacitated, grossly intoxicated, in need of medical or other reasonable attention and rescue, and unable to care for or protect himself" following the alcohol-fueled "Bible Study" hazing ritual to which he was subjected. ROA.2045-2046; ROA.2079-2081.

On June 26, 2020, the Gruvers and Isto jointly moved to dismiss the Gruvers' claims recoverable directly against Isto and/or State Farm Fire and Casualty Company ("State Farm") in its capacity as a

homeowner's insurer for Isto's parents.[2] ROA.2154-2159. The Gruvers and Isto advised the Court that they had reached a partial settlement, in accordance with *Gasquet v. Commercial Union Insurance Company*, 391 So. 2d 466 (La. Ct. App. 1980), "specifically reserving all claims against Defendant Isto to the extent any other collectible insurance coverage is afforded to Mr. Isto by any insurance carrier or company other than State Farm, including Allstate Insurance Company of Canada, Inc." ROA.2154-2155.

On July 1, 2020, the Court granted the joint motion, dismissed with prejudice the Gruvers' claims directly recoverable against Isto and/or State Farm, and left Isto in the case as a nominal defendant solely for purposes of determining his legal liability and any applicable insurance coverage. ROA.2160-2161. Neither the joint motion nor the district court's Order identified the monetary amount, or other specific terms, of the Gruvers' partial settlement with Isto and State Farm. ROA.2154-2161.

After unsuccessfully moving to dismiss for lack of personal

---

[2] Contrary to Allstate Canada's assertion in its Statement of the Case, State Farm was not named as a defendant in the underlying action.

jurisdiction, ROA.2351-2352, 2611-2622, Allstate Canada answered the Second Amended Complaint,[3] ROA.2629-2632, unsuccessfully moved for summary judgment based on two exclusions in the Policy, ROA.2677-2693, 4417-4453, and did not oppose a motion for partial summary judgment on the issue of insurance coverage filed by the Gruvers, ROA.2989-2990, which the district court granted on February 2, 2023. ROA.4417-4453.

The district court ruled, *inter alia*, that: Canadian law applied to the interpretation of the Policy (ROA.4440-4443); general liability coverage existed under the unambiguous terms in the Policy (ROA.4445); and the Gruvers alleged "a claim for general negligence against Isto for his conduct on the night in question," which "falls squarely within the general terms of the Policy." ROA.4445. Applying Canadian law, the district court also ruled that neither of the policy exclusions Allstate Canada relied on applied. ROA.4446-4453. Allstate

---

[3] In its Answer, Allstate Canada did not raise any affirmative defenses other than averring "that this incident and/or incidences were in no way due to their fault but were due to the fault and/or negligence of petitioner, or others for whom your defendants are not responsible, all of which acts and/or omissions shall be shown at the trial of this matter." ROA.2632.

Canada did not move the district court to reconsider its ruling or to enter it as a final partial judgment, pursuant Fed. R. Civ. P. 54(b), so that Allstate Canada could appeal it before trial.

On January 24, 2023, the parties filed a proposed Joint Pretrial Order.[4] ROA.4348-4382. In the proposed Joint Pretrial Order, Allstate Canada contended, for the first time,[5] that it was entitled to a settlement credit for any amount paid on behalf of Isto by State Farm. ROA.4352.

Based on Allstate Canada's failure to previously assert any intention, or take steps to preserve or pursue any right, to seek a settlement credit, on February 6, 2023, the Gruvers moved *in limine*, arguing that Allstate Canada had waived any affirmative defense that it was entitled to a settlement credit and, as such, that any evidence or

---

[4] Contrary to Allstate Canada's assertion on page 9 of its opening brief, Allstate Canada did <u>not</u> "list" "the Gruvers' May 5, 2020, correspondence" as a trial exhibit in the parties' Joint Pretrial Order. ROA.4365-4369. Allstate Canada also failed to identify the May 5, 2020 correspondence as a potential exhibit in the parties' Amended Joint Pretrial Order. ROA.4459-4463.

[5] The proposed Joint Pretrial Order was filed more than two and a half years after Allstate Canada was named as a defendant, and only one month before trial. ROA.2099-2152; ROA.4348-4382; ROA.45 at Rec. Doc. 333.

argument related to any purported settlement credit should be excluded at trial. ROA.4513-4520. Allstate Canada did not oppose or otherwise respond to the Gruvers' motion, which the district court granted on February 28, 2023. ROA.45 at Rec. Doc. 332.

The Gruvers also separately moved, as part of an omnibus motion *in limine*, to exclude, *inter alia*, "Allstate Canada's Exhibit 1 – 'State Farm and Casualty Company Homeowner's policy issued to Mark E and Ann M Isto,'" and "Allstate Canada's Exhibit 2 – 'Partial Release and Indemnity Agreement releasing Ryan M. Isto and State Farm Fire and Casualty Company executed by Plaintiffs.'" ROA.4481-4486. The Gruvers argued those proposed exhibits should be excluded because, among other things: Allstate Canada never produced or made them – or any of its other proposed exhibits – available for inspection, despite the Gruvers' specific request and in contravention of the district court's Third Scheduling Order[6]; the proposed exhibits were irrelevant; and, even if the proposed exhibits had some conceivable or marginal

---

[6] The Third Scheduling Order provided, in pertinent part, that "[p]rior to the filing of the pretrial order, the parties will exchange or make available for inspection all exhibits which the parties will or may introduce at trial." ROA.2675.

relevance, it would be outweighed by the danger of unfair prejudice to the Gruvers and the undue risk that their introduction would confuse the issues and mislead the jury. ROA.4486-4493.

Yet again, Allstate Canada did not oppose or otherwise respond to the Gruvers' omnibus motion *in limine*. ROA.44 at Rec. Doc. 331. On February 28, 2023, the Court granted the Gruvers' unopposed omnibus motion. *Id.*

A jury trial began on March 6, 2023. ROA.45 at Rec. Doc. 333. On March 7, 2023, after the Gruvers rested their case, counsel for Allstate Canada made an oral motion for a directed verdict on two grounds. ROA.5348-5350. First, Allstate Canada's counsel argued that "[t]here was no policy put into evidence" and the case "should be dismissed" against Allstate Canada, "who is the lone defendant in this case, based upon counsel's failure to prove that that insurance was in full force and effect for the loss in question." ROA.5349. Allstate Canada's counsel did not argue that the policy exclusions on which it based its summary judgment motion provided grounds for a directed verdict in Allstate Canada's favor. ROA.5349-5351.

Second, Allstate Canada's counsel argued that he believed "the

information they have elicited at this trial has not produced proof that

Mr. Isto, who was the Allstate insured, gave alcohol or forced alcohol on

the part of Mr. Max Gruver. And that's the basis of the claim."

ROA.5349. Allstate Canada's counsel continued:

> Where is the testimony and where is the evidence
> that Ryan Isto put or forced any alcohol into the
> person of Mr. Gruver? It doesn't exist. They never
> had any evidence to say he was the one that did it.
> And I think, based on that, they have failed to
> prove their element of the case as it relates to
> liability.

ROA.5349-5350. Counsel's argument provoked the following exchange

with the district court:

> **The Court**:      So it's your position that the only
> way that he has 2315[7] liability is if he handed
> Mr. Gruver a drink?
>
> **Mr. Donovan:**  I think it's – I think as it relates
> to the cause of death, yes.

ROA.5350.

After hearing from counsel for the Gruvers – who reiterated that

the Gruvers' claims against Isto were "not based on the allegation that

Mr. Isto directly gave Max Gruver Diesel alcohol that night," but "that

---

[7] *See* La. Civ. Code art. 2315 ("Every act whatever of a man that causes damage to another obligates him by whose fault it happened to repair it.").

the acts he engaged in helped perpetuate, helped flame, and his failure to intervene, and stop[] that after he saw what was happening were negligent and a cause and contributor to Max's death," ROA.5350 – the district court denied Allstate Canada's motion. The district court explained:

> The issue of coverage has been decided by the Court as a matter of law on the ruling on the motion for summary judgment … In this Court's view, no evidence of coverage was thus required. So on that issue, the Rule 50 is denied.
>
> As to the Rule 50 on negligence … the Court cannot find that no reasonable jury would have a legally sufficient evidentiary basis to find for the Gruvers on the negligence of Mr. Isto. There was evidence that Mr. Isto knew that what was happening was dangerous; that – he said that if he had to do it over again, he would have interceded; others interceded.
>
> From a negligence standpoint, a straight 2315 standpoint – duty, breach, causation, damages – the Court finds that the matter must go to a jury. And the fact that there was no direct evidence of hand-to-hand transmission of alcohol between Mr. Isto and Mr. Gruver is not – does not move the needle on whether or not … there is enough evidence, a prima facie case, to get them past a Rule 50 motion and allow this matter to go to a jury for that determination.

ROA.5351-5352.

The next day, on March 8, 2023, Allstate Canada attempted to "offer as a proffer" eight documents, including, as Allstate Canada's counsel described it, "the receipt and release – partial receipt and release of indemnification agreement known in Louisiana as a *Gasquet* release between the plaintiff and Ryan Isto and … State Farm Fire and Casualty Company."[8] ROA.5357. Allstate Canada did not move to admit any of the documents it "offer[ed] as a proffer" for the district court's consideration post-trial or in connection with any settlement credit to which Allstate Canada contended it was entitled. ROA.5357-5358. The district court noted that it had:

> granted the Plaintiffs' motion in limine as to these eight exhibits … the motion was unopposed and thus deemed admitted or deemed unopposed. There was no opposition filed. The court found that the motions were well-supported by the law.

ROA.5358. The district court also provided "additional reasons" for excluding those documents. ROA.5358-5364.

On March 8, 2023, the jury returned a $6,100,000.00 verdict for the Gruvers, attributing 2% of fault to Isto. ROA.4792-4794. On March

---

[8] Despite purporting to proffer the "*Gasquet* release," Allstate Canada never electronically submitted it to the Court, as instructed, and it never became part of the record.

21, 2023, the Court entered Judgment in favor of the Gruvers and against Isto and Allstate Canada in the amount of $122,000. ROA.4797.

On March 31, 2023, the Gruvers moved, pursuant to Fed. R. Civ. P. 59(e), to amend or alter the Judgment to award pre-judgment and post-judgment interest. ROA.4800-4801. Allstate Canada did not oppose the Gruvers' motion. ROA.47 at Rec. Doc. 352.

On April 13, 2023, Allstate Canada filed its own motion to alter or amend the Judgment, "for the purpose of having the Judgment reflect the credit due Allstate Insurance Canada, Inc. as a result of the *Gasquet* settlement executed between plaintiffs and defendant Ryan Isto." ROA.4901. The Gruvers opposed Allstate Canada's motion. ROA.4911-4938.

On June 5, 2023, the district court denied Allstate Canada's motion. ROA.4939-4945. The district court ruled that "[e]ven if Allstate Canada's request for a settlement credit was not previously waived, it would not be entitled to the relief requested pursuant to Federal rule of Civil Procedure 59 and applicable burdens of proof, ROA.4941, because, *inter alia*:

> In the instant case, a credit stipulation has not been proven to exist within the State Farm

13

Gasquet Agreement. In fact, without the State Farm Gasquet Agreement in the record, the Court has no evidence of the settlement amount, much less the terms of the settlement. While Plaintiffs made clear their intention to reserve their claims against Allstate Canada or any other additional insurance in their joint dismissal of Isto and State Farm, Plaintiffs did not express their desire to allow a credit to Allstate Canada's benefit within said dismissal. Whether the State Farm Gasquet Agreement contained similar credit or offset language to that before the Gasquet court is unclear because it has not been submitted as evidence for the Court's consideration. In the absence of any proof that the Plaintiffs, Isto, and State Farm contracted to a credit to Allstate Canada's benefit, the Court must deny Allstate Canada's Motion.

*****

Allstate Canada has not submitted any evidence that Plaintiffs and State Farm intended for Allstate Canada—or any excess insurer—to receive a credit in the amount of the purported $100,000.00 settlement in any post-trial award. Allstate Canada did not introduce the pertinent settlement agreement into the record at any time, foreclosing consideration of any such evidence. Without evidence of the agreement's terms or its parties' intentions, Allstate Canada cannot prove its entitlement to a settlement credit or offset, the amount of any entitlement, or any terms of the State Farm Gasquet Agreement whatsoever. Allstate Canada has failed to carry its burden of proof. Accordingly, Allstate Canada's request for a settlement credit must be denied.

ROA.4943-4945.

On June 13, 2023, the district court entered an order granting the Gruvers' unopposed motion to amend or alter the judgment to award pre-judgment and post-judgment interest, "for the reasons set forth in Plaintiffs memorandum." ROA.47 at Rec. Doc. 352.

On June 29, 2023, Allstate Canada filed a notice of appeal. ROA.4946-4948.

## SUMMARY OF THE ARGUMENT

The first prong of Allstate Canada's appeal is centered around purported facts for which Allstate Canada has offered no evidence. There is nothing in the record showing that State Farm paid $100,000.00 in the partial settlement the Gruvers entered into with Isto and State Farm or that the Gruvers agreed Allstate Canada would receive a credit for that – or any other – amount on any judgment obtained against Isto. The glaring absence of any record support for a central lynchpin of Allstate Canada's appeal is not due to any errors or abuse of discretion by the district court. It is the result of Allstate Canada's resounding failure to raise, pursue, or prove it was entitled to a settlement credit despite bearing the burden of proof on that issue.

Allstate Canada still has not offered an explanation, let alone a legitimate excuse, for its failure to plead or develop admissible evidence to support a settlement credit-based affirmative defense. Instead, it essentially contends that because the Gruvers entered into a "*Gasquet* settlement agreement" with Isto and State Farm, the purported settlement-credit was self-effectuating as a matter of law.

But the authority on which Allstate Canada relies undercuts that proposition. And, even if Allstate Canada were correct that it was automatically entitled to a settlement credit, that would only beg the ultimate, operative question because Allstate Canada does not – and cannot – point to any record evidence to establish the amount of the credit it would be due. That the record is devoid of any such evidence is a consequence of Allstate Canada's own failures and missteps – which include electing not to oppose the Gruvers' motions *in limine* or, as the district court noted, failing to "introduce the pertinent settlement agreement into the record at any time," ROA.4944 – not any errors or abuses of discretion by the district court.

The second prong of Allstate Canada's appeal is similarly futile. In that second prong, Allstate Canada attempts to repurpose its previously

denied summary judgment motion, seeking a ruling that intentional

conduct and abuse, molestation, or harassment exclusions in the Policy

undisputedly relieve Allstate Canada of its indemnity obligations.

However, because Allstate Canada did not renew that previously denied

motion, or the arguments on which it was based, through a Rule 50

motion at or after trial, it failed to preserve that issue for appeal.

Moreover, even if Allstate Canada had renewed its exclusion-

based arguments at or after trial, the evidence developed at trial only

reinforced that the exclusions undisputedly do not apply. Indeed,

contrary to its position on summary judgment, Allstate Canada argued

forcefully at trial that there was no "evidence that Ryan Isto put or

forced any alcohol into the person of Mr. Gruver" "doesn't exist," and

that the Gruvers "never had any evidence to say he was the one that did

it." ROA.5349-5350.

That concession underscores the inapplicability of the intentional

acts exclusion, which would only be triggered if it were undisputed that:

- Isto intended to commit an intentional act against Max with
  the subjective intent to cause Max "Bodily Injury"; Isto in
  fact committed that intentional act or directed someone else
  to commit an intentional act against Max; and the
  intentional act caused Max's death; or

- Isto intentionally failed to act with an intent to cause Max "Bodily Injury," or directed someone else to intentionally fail to act with the requisite intent, and that intentional failure to act caused Max's death; or

- Isto committed or directed someone else to commit a criminal act that caused Max's death; or

- Isto criminally failed to act, or directed someone else to criminally fail to act, and that failure caused Max's death.

Rather than attempt to reconcile its contradictory positions, Allstate Canada misrepresents Isto's trial testimony and the content of both exclusions; persists in relying on an inapplicable hazing statute that was not enacted until after – and as a result of – Max's death; and continues to cite inapposite Louisiana law, rather than Canadian law, the latter of which Allstate Canada already conceded applies to policy-interpretation issues in this case. In short, Allstate Canada has again made clear that it did not – and cannot – carry its burden of proving the undisputed applicability of the exclusions to the undisputed facts of this case.

Finally, in the last prong of its appeal, Allstate Canada paradoxically argues that because the Gruvers did not "offer any insurance policy into evidence at trial," "no coverage was proven."[9]

---

[9] Allstate Br. at 31, 32.

Allstate Canada seems to have forgotten that the district court resolved

the issue of insurance coverage in the Gruvers' favor before trial when it

granted the Gruvers' unopposed motion for summary judgment. As a

result, the issue of coverage, including the "existence" of the Policy, was

not one the Gruvers needed to have heard or resolved by the jury. That

issue had already been resolved, as a matter of law, in the Gruvers'

favor on summary judgment. And, because Allstate Canada did not

oppose the Gruvers' motion, it cannot properly challenge the district

court's summary-judgment ruling on the issue of coverage on appeal.

For these reasons and those that follow, the Court should affirm

the judgment and well-reasoned rulings of the district court.

## ARGUMENT

## I.   Allstate Canada Waived And Categorically Failed To Prove An Entitlement To A Settlement Credit

### A.   Standards of Review

#### 1.   Rule 59(e) Motions[10]

"A Rule 59(e) motion 'calls into question the correctness of a

---

[10] In articulating the standard of review applicable to this aspect of its appeal, Allstate Canada appears to have confused its Rule 59(e) motion with a Rule 50(a) motion. *See* Allstate Br. at 14. This Court reviews a denial of a Rule 59(e) motion for an abuse of discretion, not *de novo*.

judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quotation marks and citation omitted).

A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478–79. Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "[R]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

A district court's denial of a Rule 59(e) motion is reviewed "under the deferential abuse of discretion standard." *Ervin v. Sprint Communs. Co. LP.*, 364 F. App'x 114, 117 n.4 (5th Cir. 2010) (citing *Marseilles Homeowners Condo. Ass'n v. Fid. Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008)).

### 2.     Review of a District Court's Evidentiary Rulings

A court of appeals "may affirm a district court's exclusion of evidence on any ground supported by the record." *Macy v. Whirlpool Corp.*, 613 F. App'x 340, 344 n.18 (5th Cir. 2015) (citing *MCI Commc'ns Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir. 2011)). Where, as here, a party does not challenge a motion *in limine*, a district court's grant of the motion is reviewed for plain error. *United States v. Davis*, 308 F. App'x 851, 854 (5th Cir. 2009) (citing *United States v. Graves*, 5 F.3d 1546, 1552 (5th Cir. 1993); *United States v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993)). To demonstrate plain error on an evidentiary ruling, "an appellant must show clear or obvious error that affects his substantial rights; if he does, this court has discretion to correct a forfeited error that seriously affects the fairness, integrity, or public reputation of judicial proceedings, but is not required to do so." *United States v. Duffaut*, 314 F.2d 203, 208-09 (5th Cir. 2002).

### B.     Allstate Canada Waived Any Settlement Credit-Based Affirmative Defense

Allstate Canada does not contest that "an offset due to a settlement credit is an affirmative defense that must be pleaded and proved by the defendant," or that the "failure to plead an affirmative

defense generally results in waiver of that defense." *Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C.*, 546 F. App'x 458, 465 (5th Cir. 2013).[11] Nor can Allstate Canada contest that it never pleaded a settlement-credit affirmative defense because in its Answer to the Gruvers' Second Amended Complaint, Allstate Canada made only general denials and did not raise *any* affirmative defenses. ROA.2629-2632.

Instead, Allstate Canada argues, for the first time on appeal, that any such waiver should be excused because, purportedly, "plaintiffs were not prejudiced."[12] But Allstate Canada waived that argument by failing to raise at any time before this appeal, despite multiple opportunities to address the Gruvers' pre- and post-trial contentions that Allstate Canada had waived a settlement credit-based affirmative defense.[13]

Indeed, it is well-established that "[t]his Court will not address an argument raised by a party for the first time on appeal … unless it

---

[11] *See also* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmative state any avoidance or affirmative defense ….").

[12] Allstate Br. at 21.

[13] ROA.4512-4521; ROA.4913-4917.

meets the plain error standard." *Forbush v. J.C. Penny Co.*, 98 F.3d 817, 822 (5th Cir. 1996) (citing *United States v. Calverley*, 37 F.3d 160, 163 (5th Cir. 1994) (en banc); *Douglass v. United Services Auto. Assoc.*, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc). Allstate Canada's untimely argument does not meet that standard because the determination of prejudice in this scenario is not a "purely legal issue." *Forbus*, 98 F.3d at 822. Rather, "[w]hether there was unfair surprise or prejudice is a fact-specific inquiry based on the circumstances of the case." *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 402 (5th Cir. 2014) (citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)).[14]

---

[14] Allstate is wrong that the Gruvers would not have suffered prejudice if Allstate Canada's failure to raise and properly pursue a settlement-credit affirmative defense had been excused. As a result of Allstate Canada's repeated failures to raise, preserve, and develop a settlement credit-based affirmative defense, when the Gruvers proceeded to trial against Isto and Allstate Canada, they did so with the well-grounded understanding, enshrined in the district court's ruling on their motion *in limine*, that Allstate Canada had waived its right to seek a settlement credit. Having repeatedly slept on its rights, Allstate Canada should not now be permitted to unduly prejudice the Gruvers by altering—after the fact and on appeal—material aspects of the pre-trial landscape that informed their calculation about whether to proceed to trial against Isto and Allstate Canada. *See, e.g.*, *LSREF2 Baron*, 751 F.3d at 402 (affirming district court's holding that plaintiff was "unquestionably prejudiced" by defendant's failure to raise affirmative defense until after summary judgment).

### C.    Allstate Canada Has Not Proven It Was Entitled to a Settlement Credit

Even if Allstate Canada had not waived a settlement credit-based affirmative defense, Allstate Canada has not – and cannot – point to any admissible evidence in the record to establish that it is entitled to a settlement credit, much less the amount of that purported credit. The predicament in which Allstate Canada finds itself is not the result of plain error or abuse of discretion by the district court. Allstate Canada undisputedly failed to raise, pursue, and ultimately prove, with competent admissible evidence, its entitlement to a settlement credit, or the amount thereof, before, during, or after trial, despite at all times bearing the burden of proof on those issues. *See Acadian Diagnostic Labs., L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 411 (5th Cir. 2020) ("[A]s with any other affirmative defense, [defendant] 'bear[s] the burden of proving each element of [the] affirmative defense by a preponderance of the evidence.'" (quoting *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 697 (5th Cir. 2020)) (second and third alterations in original)).

Allstate Canada could have raised a settlement credit as an affirmative defense, but did not. ROA.2629-2632. Allstate Canada could

have attempted to develop evidence related to its purported entitlement to a settlement credit during discovery and then sought summary judgment on the issue, but did not, electing to confine its motion to exclusion-based defenses.[15] ROA.2677-2693. Allstate Canada could have opposed the Gruver's motion *in limine* seeking to bar Allstate Canada from making arguments or offering evidence in support of a purported settlement credit at trial, but did not. ROA.45 at Rec. Doc. 332.

Moreover, although Allstate Canada now argues that the "trial judge could have accepted the proffer of the agreement into evidence at trial for purposes of determining the credit issue post-verdict,"[16]

---

[15] District courts in this Circuit have considered, and granted, motions for summary judgment based on defendants' claims they are entitled to settlement credits. *See, e.g., Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, No. H-11-1968, 2013 U.S. Dist. LEXIS 192660, at * 7 (S.D. Tex. April 3, 2013) (granting a defendant's motion for summary judgment "on their claim they are entitled to a settlement credit," while reserving the issue of "the value of the credit … for trial"), aff'd in part and rev'd in part on other grounds, 759 F.3d 498 (5th Cir. 2014); *Thomas v. PFG Transco, Inc.*, No. 4:17-cv-007856, 2020 U.S. Dist. LEXIS 211080, at *10 (E.D. Tex. Nov. 10, 2020) (granting defendants' motion for summary judgment on their claim of entitlement to a settlement credit, where "Defendants have shown that they are entitled to a settlement credit," and "put the settlement amount on the record," by filing "the Settlement Agreement – and consequently the settlement amount – between Plaintiff and the settling Defendants under seal as an attachment" to their summary judgment motion).
[16] Allstate Br. at 23.

Allstate Canda never made that argument when it attempted to proffer the agreement at trial, ROA.5357-5358, or at any other time before, during, or after trial.[17]

Despite that, Allstate Canada – with no apparent sense of irony – tries to blame the district court for Allstate Canada's self-imposed predicament, suggesting that the district court created a Catch-22 by excluding the "*Gasquet* release" from trial and then denying Allstate Canada's Rule 59(e) motion, in part, because the "*Gasquet* release" was "not contained in the trial record."[18] But nothing in the district court's Ruling indicates that the district court would have refused to consider a properly authenticated settlement agreement, or other evidence related to its material terms, if Allstate Canada had filed it into the record

---

[17] Allstate Canada implies that it is somehow material that "[i]n the court's amended pre-trial order, it is explicitly stated that State Farm previously paid a sum on behalf of Mr. Isto, and it was Allstate Canada's position that fault cast against Ryan Isto at trial, if any, would not result in a sum that would surpass that credit."[17] But that statement, which came directly from Allstate Canada, is merely a recitation of Allstate Canada's claims. ROA.4456. It was incumbent upon Allstate Canada to prove, with admissible evidence, that "State Farm previously paid a sum on behalf of Mr. Isto," the amount of that purported "sum," and that any such sum entitled Allstate Canada to a "credit" on a judgment entered against Isto.

[18] Allstate Br. at 22-23.

before or after trial, including as an exhibit with its Rule 59(e) motion. To the contrary, in its ruling denying Allstate Canada's Rule 59(e) motion, the district court repeatedly faulted Allstate Canada for its failure to take steps to ensure that the State Farm Gasquet Agreement was "otherwise a part of the record in this matter," included as part of the "exhibits" to its Rule 59(e) motion, "submitted as evidence for the Court's consideration," or introduced "into the record *at any time*." ROA.4940, 4942, 4943, 4944 (emphasis added).

Thus, the district court did not abuse its discretion – and, in fact, had no choice[19] – in denying Allstate Canada's Rule 59(e) because Allstate Canada failed to provide the court with any legal or evidentiary basis to rule that the Allstate Canada was entitled to a settlement credit or the amount of that credit. And, just as Allstate Canada's inability to contest that it undisputedly waived a settlement credit-based affirmative defense or to point to *any* evidence with which it could prove it was entitled to a settlement credit, much less the amount of

---

[19] As the district court noted, "[w]ithout evidence of the agreement's terms or its partis' intentions, Allstate Canada cannot prove its entitlement to a settlement credit or offset, the amount of any entitlement, or any terms of the State Farm Gasquet Agreement whatsoever." ROA.4945.

any such credit, doomed its Rule 59(e) motion, it dooms this aspect of

Allstate Canada's appeal.[20]

That is particularly true because – as the district court found[21] –

there is no authority to support Allstate Canada's suggestion that all

settlement agreements that qualify as "Gasquet agreements"

necessarily contemplate a credit to an excess, non-settling insurer, or

that such credit applies automatically without proof. Indeed, Allstate

Canada concedes on appeal that the district court's "statement" that

---

[20] Allstate Canada repeatedly cites to a May 2020 letter from the
Gruvers' counsel to Allstate Canada, which it attached to its motion to
dismiss for lack of personal jurisdiction. Allstate Br. at 7-9, 18-19. The
header of the letter prominently advises: "***CONFIDENTIAL SETTLEMENT
COMMUNICATION … WITHOUT PREJUDICE: FOR SETTLEMENT PURPOSES
ONLY … INADMISSIBLE PURSUANT TO F.R.E. 408***." ROA.2387. Allstate
Canada falsely represents that it listed the letter in its "pre-trial order
submission." Allstate Br. at 9. In fact, Allstate Canada did not identify
the letter as a potential trial exhibit in either of the proposed pre-trial
orders the parties submitted to the district court, ROA.4348-4382;
ROA.4459-4463, and it did not file the letter as an exhibit to its motion
for summary judgment or its Rule 59(e) motion. ROA.2677-2693;
ROA.4901-4910. Nor did Allstate Canada take any steps to establish
that the letter qualifies as an opposing party statement exempt from
exclusion under Fed. R. Evid. 801 or is otherwise admissible. Nor could
it. As a settlement communication, the letter is plainly inadmissible
and cannot be used by Allstate Canada to "prove or disprove the
validity or amount of a disputed claim." Fed. R. Evid. 408(a). It should
be disregarded on appeal.
[21] ROA.4942.

"neither *Gasquet* nor its progeny suggests that all agreements referred to as 'Gasquet agreements' necessarily involve a credit to an excess insurer or the automatic application of any such credit without proof" "*is __not__ erroneous on its face*."[22]

Despite that fatal concession, Allstate Canada, without any legal or factual support, advances inapposite argument that "the facts and evidence of this present case and the trial court's own statements establish that a true Gasquet settlement was validly, voluntarily executed by Plaintiffs, State Farm and Ryan Isto; therefore, application of laws established under Gasquet principles is legally appropriate."[23] Allstate Canada misses the point. It is incumbent on Allstate Canada to show that the "law established under Gasquet principles" mandate an automatic settlement credit to a non-settling insurer, as a matter of law and without proof. As Allstate Canada concedes, nothing under *Gasquet* or its progeny supports that proposition.

In *Gasquet*, the plaintiff reached a pre-trial settlement with the defendants and the defendants' primary insurer. *Gasquet*, 391 So. 2d at

---

[22] Allstate Br. at 24 (emphasis added).
[23] Allstate Br. at 24.

468. Unlike in this case, the "partial receipt and release issued by Gasquet in favor of the defendants" was introduced into the record in connection with a motion for summary judgment filed by the defendant's excess carrier. *Id.* at 470. The partial receipt and release expressly provided that the plaintiff was "specifically reserving his claims … to the extent that collectible coverage is afforded to [defendants] by said policy of excess insurance issued by" the excess insurer. *Id.* at 471.

The excess insurer argued on summary judgment that because the primary insurer only paid $200,000, and not the underlying limit of $300,000, the excess insurer has no obligation to provide coverage under the excess policy, which provided that "[l]iability under this policy with respect to any occurrence shall not attach unless and until the insured, or the insured's underlying insurer shall have paid the amount of the underlying limits on account of such occurrence." *Id.* The trial and appellate courts rejected that argument. The appellate court held that the plaintiff's "release of the primary insurer … and partial release [of the defendants] for less than the full primary limits, but granting a credit for the full primary limits and reserving the right to

proceed against the excess carrier," did not release the excess carrier "from its liability as the excess insurer." *Id.* at 472.

The issue on appeal in *Gasquet* was not whether the excess insurer was entitled to a settlement credit, or whether such a credit was a necessary feature of settlement agreements that release claims directly recoverable against a defendant or a defendant's primary insurance carrier, while expressly reserving all claims to the extent coverage is afforded to the defendant through an excess insurance policy. The issue was whether such an agreement could validly achieve that result when the primary insurance carrier had not exhausted its policy limits as part of the underlying settlement. *Id.* at 470-472. Nothing in *Gasquet* suggests, let alone mandates, that all agreements in Louisiana releasing claims against an underlying insurer but reserving them against an excess insurer necessarily include a settlement credit to an excess insurer, let alone a credit that applies automatically without any proof.

*Aggreko* also undermines Allstate Canada's suggestion that it is automatically entitled to a settlement credit. In *Aggreko*, this Court reiterated the two principal features of a Gasquet release. Neither of

them involved a credit – automatic or otherwise – to a non-settling

excess insurer.  This Court explained:

> [B]y executing a Gasquet release in a settlement
> agreement, a plaintiff (1) releases the primary
> insurer entirely, and (2) releases the insured from
> all claims which might be recovered from the
> insured directly, reserving claims against the
> insured only to the extent that collectible coverage
> is afforded by an excess insurance policy.
> Procedurally, after a Gasquet release is executed
> the insured remains in the lawsuit as a "nominal"
> defendant while the plaintiff pursues recovery
> from the excess insurer.

*Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 695 (5th Cir.

2019) (quoting *RSUI Indemnity Co. v. American States Ins. Co.*, 127 F.

Supp. 3d 649, 658 (E.D. La. 2015)) (internal quotation marks and

citation omitted).[24]

---

[24] In *RSUI* – an opinion Allstate Canada erroneously attributes to this
Court – the district court noted that "[t]he testimony at trial and the
Court's own research establishes that Louisiana lawyers use '*Gasquet*'
as a term of art to denote a type of release in which a plaintiff settles
with and releases a defendant insured and its primary insurer, but
reserves his or her right to pursue additional amounts available
through the insured's excess policy." *RSUI Indemnity Co.*, 127 F. Supp.
3d at 657. Like this Court in *Aggreko*, the *RSUI* court did not rule or
otherwise find that it was a necessary and integral feature of all
Gasquet agreements that they automatically provide settlement credits
to non-settling excess insurers, let alone that the credits apply
automatically without proof of the nature or amount of the credit.

Finally, nothing in *Miller* supports the sweeping proposition that "any money paid by any underlying insurer as part of any settlement, whether it be a Gasquet agreement or another type of agreement, will [automatically] be included in the liability of the insured and offset by the value of the *Gasquet* credit."[25] In fact, as the Gruvers pointed out in the district court, unlike Allstate Canada, the excess insurer in *Miller* properly pleaded as an affirmative defense its entitlement to a settlement credit based on prior settlement agreements,[26] and provided evidence of the pertinent amounts and terms of the underlying insurance policies and settlement agreements before the district court entered judgment. *Miller*, 338 Fed. App'x at 455-456 (detailing the evidence before the district court and noting, *inter alia*, that in "entering judgment, the district court considered the prior payments by the Settling Insurers to determine Illinois National's settlement credit"). Thus, *Miller* undermines, rather than bolsters, Allstate Canada's claim that it was automatically entitled to settlement credit without having to prove its entitlement to, let alone the amount of, that

---

[25] *See* Allstate Br. at 26 (citing *Miller v. Wladyslaw Estate*, 338 F. App'x 454 (5th Cir. 2009)).
[26] ROA.4922-4938.

credit.

The district court did not abuse its discretion when it rejected Allstate Canada's belated attempt to claim the benefits of an affirmative defense it never raised, developed, or sought to prove through competent, admissible evidence. This Court should affirm the district court's well-reasoned and well-grounded ruling denying Allstate Canada's Rule 59(e) motion.

## II.   The Policy Exclusions Allstate Canada Relies On Are Inapplicable

In the second prong of its appeal, Allstate Canada renews its summary judgment argument that it "is not liable for the damages caused by its insured, Ryan Isto, because liability for damages arising from the insured's conduct is specifically excluded from coverage under the policy."[27] Allstate Canada's attempt to renew this argument – without expressly requesting review of the district court's denial of its motion for summary judgment or identifying the applicable standard of review[28] – is futile for a number of reasons.

_____

[27] *Id.* at 27.

[28] An appellate court reviews "the denial of a motion for summary judgment *de novo*, applying the same standard as the district court." *Netto v. Atl. Specialty Ins. Co.*, 929 F.3d 214, 216 (5th Cir. 2019) (citing

## A.     Allstate Canada Failed to Preserve the Applicability of the Exclusions for Appellate Review

Allstate Canada did not seek a ruling regarding the applicability of the exclusions during or after trial through a Rule 50 motion or any other means. As a result, the applicability of those exclusions is not properly before this Court on appeal. The general rule in the Fifth Circuit is that "an interlocutory order denying summary judgment is not to be reviewed when final judgment adverse to the movant is rendered on the basis of a full trial on the merits.'" *Blessey Marine Servs.v. Jeffboat, L.L.C.*, 771 F.3d 894, 897 (5th Cir. 2014) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 570 (5th Cir. 1994)). And although the Supreme Court recently held that "a post-trial motion under Rule 50 is not required to preserve for appellate review of purely legal issues resolved at summary judgment," *Dupree v. Younger*, 143 S.Ct. 1382, 1389 (2023), Allstate Canada does not seek to avail itself of this exception to the Fifth Circuit's general rule.

---

*First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836-37 (5th Cir. 2009). The evidence is reviewed in the light most favorable to the opponent of summary judgment. *Netto*, 929 F.3d at 216. Summary judgment is only appropriate where the "movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Nor could it. While a "district court's interpretation of an insurance contract and its exclusion is a question of law and is subject to de novo review, *Delta Seaboard Well Serv's v. Am. Int'l Specialty Lines Ins. Co*, 602 F.3d 340, 341 (5th Cir. 2010), Allstate Canada does not challenge the district court's interpretation of the exclusions at issue. It instead cites both the summary-judgment record and – improperly – the trial record[29] to argue that one or both of the exclusions apply "[u]nder the undisputed facts and evidence of this case."[30] Allstate Canada has not preserved that argument, which involves mixed questions of law and fact, for appeal. *See Blessey Marine Servs*, 771 F.3d at 897.

## B. Allstate Canada's Attempts to Rewrite the Exclusions Confirms They Are Inapplicable

Even if the district court's ruling denying Allstate Canada's summary judgment motion were properly before the Court, Allstate

---

[29] *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 414 (5th Cir. 2021) (in reviewing a district court's summary judgment rulings, an appellate court's "inquiry is limited to the summary-judgment record") (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994)).
[30] Allstate Br. at 30.

Canada implicitly reaffirms the soundness of the ruling by resorting to rewriting the exclusions in a scramble to find support for its arguments.

For example, Allstate Canada claims that the "policy itself also excludes for bodily injury 'caused by the intentional act or criminal acts or failure to act by any person insured by this policy; or any other person at the direction of, <u>or with the knowledge of any persons insured by this policy</u>,"[31] in an apparent attempt to support its argument that that Isto's "failure to stop the other fraternity members from hazing Max Gruver is excluded by the plain language of the policy that insurers him."[32] But that last phrase – underlined here for emphasis – is not contained in the Policy's "intentional act" exclusion, which excludes from coverage:

> (9) Bodily Injury or Property Damage caused by any intentional or criminal acts or failure to act by:
> 1. any person insured by this policy; or
> 2. any other person at the direction of any person insured by this policy;

ROA.2972; ROA.3298. Thus, the exclusion undercuts, rather than supports, Allstate Canada's assertion that Isto's failure to stop the other

---

[31] Allstate Br. at 30 (emphasis added).
[32] Allstate Br. at 31.

fraternity members from hazing Max "is excluded in the plain language of the policy." The plain language of the exclusion shows the opposite is true.

Similarly, the second exclusion on which Allstate Canada relies – the "abuse, molestation, or harassment" exclusion – excludes from coverage "sexual, physical, psychological or emotional abuse, molestation or harassment, including corporal punishment by, at the direction of, or with the knowledge of any person insured by this policy." ROA.2972; ROA.3298. The exclusion does not – as Allstate Canada misleadingly represents – exclude from coverage "bodily injury caused by the physical, psychological or emotional abuse or harassment occasioned by an insured person" or "bodily injury that arises from an insured person's failure to prevent such physical, psychological or emotional abuse from occurring."[33] That second exclusion therefore has no bearing on claims, like the Gruvers' claims against Isto, which arise out of Max's death, undisputedly a "Bodily Injury" under the Policy. ROA.2971; ROA.3297.

---

[33] Allstate Br. at 29-30.

Ultimately, that Allstate Canada had to rewrite both exclusions to try to marshal support for its (waived) arguments on appeal simply re-confirms that neither of the exclusions apply, by their plain terms, to the undisputed facts of this case.

## C. Allstate Canada Did Not – And Cannot – Show that Either Exclusion Applies

### 1. Canadian Law Governs the Interpretation of the Exclusions

Allstate Canada does not challenge the district court's finding that Canadian law, not Louisiana law, governs the interpretation of the Policy and the exclusions on which Allstate Canada relies. [34] ROA.4440-4443. Nor did Allstate Canada dispute that issue below.

---

[34] In fact, despite bearing the burden of proving the applicability of the exclusions, Allstate Canada fails to cite *any* competent legal authority – from Canada, Louisiana, or anywhere else – to help guide the Court's interpretation of the exclusions at issue in this case, let alone to establish that it is entitled to judgment as a matter of law. Although Allstate Canada cited four Louisiana cases in the district court in support of its proffered interpretation of the international act exclusion, ROA.2691-2692, as the Gruvers demonstrated on summary judgment, all of the cases were legally inapposite because they involved "intentional act" exclusions different from the "intentional or criminal acts of failure to act" exclusion in the Policy, and factually distinguishable because the insureds in those cases specifically intended to commit the intentional acts against the specific victims (or the specific victims' property) that gave rise to the relevant injures or harm. ROA.3699-3701.

Indeed, although the Gruvers raised the issue of the applicability of Canadian law both in their opposition to Allstate Canada's summary judgment motion, ROA.3689-3691, and in their brief in support of their affirmative motion for partial summary judgment, ROA.3002-3006, Allstate Canada never responded to the Gruvers' arguments. ROA.4439. Allstate Canada also failed to offer any legal authority that would support the application of Louisiana law, rather than Canadian law, to the interpretation of the exclusions.

Further, in addition to being undisputed, the applicability of Canadian law to the interpretation of the exclusions is undisputable. It is undisputed that Allstate Canada issued the Policy in Canada and the Policy does not contain a choice-of-law provision. ROA.3733; ROA.2965-2980; ROA.3290-3305. In Louisiana, when an insurance policy does not contain a choice-of-law provision, Louisiana courts apply Louisiana choice-of-law principles and "generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy." *Woodfield*, 193 F.3d at 360 (citing *Anderson v. Oliver*, 97-721 (La. App. 3 Cir. 01/07/98), 705 So. 2d 301, 305-06; *Holcomb v. Universal Ins. Co.*, 93-1424 (La. App. 3 Cir.

6/1/94), 640 So. 2d 718, 722). Accordingly, Louisiana's choice-of-law

rules dictate that Canadian law governs the interpretation of the Policy.

*See Levy v. Phillips & Jordan, Inc.*, No. 08-5065, 2011 U.S. Dist. LEXIS

70114, at *13 (E.D. La. June 29, 2011).[35]

Allstate Canada's failure and inability to challenge the district

court's conclusion that Canadian law applies to the interpretation and

application of the exclusions at issue is fatal to this aspect of its appeal.

As the Gruvers thoroughly demonstrated below – with the assistance of

a Rule 44.1 declaration and supplemental declaration from an expert on

Canadian insurance law, Professor Erik S. Knutsen[36] – applying

Canadian law to the plain language of the exclusions and the

undisputed summary-judgment facts leads to the inexorable conclusion

that Allstate Canada did not – and cannot – carry its burden of

---

[35] In addition, as the Gruvers successfully argued below, Allstate Canada could not, and cannot, in good faith dispute that Canadian law applies because it previously, without qualification, represented to the district court that "[t]he laws of Canada would apply to any disputes regarding the interpretation of the Policy." ROA.2363. As such, as the district court found, Allstate Canada was judicially estopped from arguing that Louisiana, rather than Canadian law, applied. ROA.4440.
[36] ROA.3026-3059, 3709-3711. In accordance with Fed. R. Civ. P. 44.1, Professor Knutsen's unchallenged declarations provide clear proof of the relevant Canadian legal principles that govern the interpretation of the Policy and its exclusions under Canadian law.

demonstrating that the exclusions were undisputedly triggered, as a matter of law, by the undisputed summary-judgment facts.

### 2. Allstate Canada Had the Burden of Proving the Exclusions Undisputedly Applied

In Canada, as in Louisiana, the insurer bears the burden of establishing the applicability of policy exclusions. *See Ledcor Constr. Ltd. v. Northbridge Indemnity Ins. Co.,* 2016 SCC 37 (S.C.C.); *Progressive Homes Ltd. v. Lombard General Ins, Co. of Canada*, [2010] 2 S.C.R. 245 (S.C.C.); *see also* ROA.3037-3038; *see also Francioni v. Hartford Cas. Ins. Co.*, No. 15-528, 2017 U.S. Dist. LEXIS 36977, at *7 (M.D. La. Mar. 15, 2017) (citing *Tunstall v. Stierwald*, 2001-1765 (La. 2/26/02), 809 So. 2d 916; *Curry v. Taylor*, 40,185 (La. App. 2d Cir. 9/21/05), 912 So. 2d 78; *Whitman v. Louisiana Farm Bureau Cas. Ins. Co.*, 45,199 (La. App. 2d Cir. 4/14/10), 34 So. 3d 1104).

Moreover, in Canada, as in Louisiana, insurance policy exclusions are interpreted narrowly. *See Non-Marine Underwriters, Lloyd's of London v. Scalera*, [2000] 1 S.C.R. 551 (S.C.C.) at para. 70; *Breland v. Schilling*, 550 So. 2d 609, 610 (La. 1989) ("[A]n exclusion from coverage should be narrowly construed.") (citing *Snell v. Stein*, 259 So. 2d 876 (La. 1972)). Additionally, in Canada, as in Louisiana, ambiguous terms

in insurance policies are construed *contra proferentem* – against the insurer. *See Scalera*, [2000] 1 S.C.R. 551 (S.C.C.) at para. 70 ("Since insurance contracts are essentially adhesionary, the standard practice is to construe ambiguities against the insurer[.]") *Breland*, 550 So. 2d at 610 ("Ambiguous policy provisions are to be construed against the confector, the insurer.") (citing La. Civ. Code art. 2056; *Salomon v. Equitable Life Assurance Soc'y of U.S.*, 202 So. 2d 329 (La. 1943)); *Scottsdale Ins. Co. Logansport Gaming, L.L.C.*, 556 F. App'x 356, 359 (5th Cir. 2014) (In Louisiana, "any ambiguous provisions" in an insurance contract "must be construed in favor of coverage to the insured and against the insurer who issued the policy.") (citing *Smith v. Matthews*, 61 So. 2d 1377, 1379 (La. 1993)).

> **3.** **Under Canadian Law and the Undisputed Facts, the "Intentional or Criminal Acts or Failure to Act" Exclusion Does Not Apply**

As Professor Knutsen detailed in his Declaration, Canadian courts have provided controlling guidance on the interpretation and application of key aspects of the "intentional or criminal acts or failure to act" exclusion at issue in this case. ROA.3038-3046. First, to avail itself of an "intentional act" exclusion, an insurer must prove that the

insured committed an intentional tort that injured the victim with a subjective intent to bring about the resulting harm. *See Scalera*, [2000] 1 S.C.R. 551 (S.C.C.) at para. 92;[37] *see also* ROA.3040-3041. Second, an "intentional failure to act" exclusion, like an exclusion grounded on an "intentional act," requires an insurer to show that the insured failed to act with a subjective intent to cause harm through inaction. *See Scalera*, 2000 SCC 24 at para. 92; *see also* ROA.3053.

Third, Canadian courts hold that the phrase "intentional or criminal acts or failure to act" must be construed such that "intentional" and "criminal" modify both "act" and "failure to act." *See Durham Dist. Sch. Bd. v. Grodesky*, 2012 ONCA 270 (Court of Appeal for Ontario) at para. 9-10;[38] *see also* ROA.3041-3042. Finally, Canadian law dictates that a "criminal act" or "criminal failure to act" exclusion only applies when the insured's criminal act or criminal failure to act caused the bodily injury at issue. *See Eichmanis v. Wawanesa Mut. Ins. Co.*, 2007 ONCA 92 (Court of Appeal for Ontario) at para. 22, 27;[39] *see also* ROA.3043-3044.

---

[37] A true and correct copy of *Scalera* can be found at ROA.3085-3120.
[38] A true and correct copy of *Grodesky* can be found at ROA.3122-3125.
[39] A true and correct copy of *Eichmanis* can be found at ROA.3128-3136.

Accordingly, to avail itself of the "intentional or criminal acts or failure to act" exclusion, under Canadian law, Allstate Canada had the burden of proving there was no genuine dispute that:

- Isto intended to commit an intentional act against Max with the subjective intent to cause Max "Bodily Injury"; Isto in fact committed that intentional act or directed someone else to commit an intentional act against Max; and the intentional act caused Max's death; or

- Isto intentionally failed to act with an intent to cause Max "Bodily Injury," or directed someone else to intentionally fail to act with the requisite intent, and that intentional failure to act caused Max's death; or

- Isto committed or directed someone else to commit a criminal act that caused Max's death; or

- Isto criminally failed to act, or directed someone else to criminally fail to act, and that failure caused Max's death.

*See Scalera*, 2000 SCC 24 at para. 92; *Grodesky*, 2012 ONCA 270 at para. 9-10; *Eichmanis*, 2007 ONCA 92 at para. 22, 27; *see also* ROA.3051-3053, 3055-3057.[40] Based on the undisputed summary-judgment facts and controlling Canadian law, Allstate Canada could not – and still cannot – prove any of those scenarios occurred.

---

[40] Allstate Canada has not offered any authority – either below or on appeal – to contest these legal principles or their applicability to the proper interpretation of the "intentional or criminal acts or failure to act" exclusion.

First, it was undisputed below – and Allstate Canada still does not dispute[41] – that Isto did not commit an intentional act against Max, or direct anyone else to do so, with the intent to cause Max bodily injury or death. ROA.3725.[42] Although Isto did not make any efforts to mitigate or reduce the aggressiveness of other Phi Delt members during Bible Study, there is nothing in the summary-judgment record to support a finding that he directed them to act in the aggressive way that they did. ROA.3725-3726.

Second, it was undisputed below – and Allstate Canada still does not dispute[43] – that Isto did not intentionally fail to act or direct anyone else to intentionally fail to act in a way that caused Max's death, let

---

[41] Allstate Canada does not identify a single intentional act by Isto directed at Max, let alone an intentional act directed at Max with the intent to cause Max bodily injury, that caused or contributed to Max's death. *See generally* Allstate Br. at 28-31.

[42] As the district court noted, Allstate Canada did not "submit a reply statement of material facts specifically addressing the offered facts in Plaintiffs' controverting statement" of "Additional Undisputed Material Facts in Opposition and Response to Allstate Canada's Motion for Summary Judgment." ROA.4426. Nor did Allstate Canada "file a Statement of Disputed Facts as required by the Local Rules" in response to the Statement of Undisputed Material Facts that the Gruvers filed in support of their cross-motion for summary judgment on the issue of insurance coverage. ROA.4426.

[43] *See generally* Allstate Br. at 28-31.

alone with a subjective intent to cause "Bodily Injury" to Max. ROA.3725-3728; *see Scalera*, 2000 SCC 24 at para. 92; *see also* ROA.3053-3054. While Isto's failure to mitigate or reduce the aggressiveness of other Phi Delt members during the Bible Study, ROA.3726, was undisputedly negligent – as the jury ultimately confirmed at trial[44] – there are no facts – undisputed or otherwise – indicating that "his failure to stop the other fraternity members from hazing Max Gruver"[45] was intentional or with the requisite intent to cause Max "Bodily Injury."

To the contrary, Isto's uncontradicted deposition testimony that he "became personally uncomfortable with" and was "shocked" by some of what was occurring during Bible Study, refutes any notion that he intentionally failed to mitigate or reduce the aggressiveness of other Phi Delt members with a subjective intent to cause Max or any other pledge

---

[44] ROA.4792-4794. The jury's verdict refutes Allstate Canada's bald assertion that the argument that "Isto's responsibility and liability in damages in this case arise from his failure to stop other people from conduct that led to Max's death" "cannot be accepted under the facts of this case." Allstate Br. at 31. The jury unequivocally "accepted" that argument when it found Isto liable for Max's death.

[45] Allstate Br. at 31.

"Bodily Injury."[46] ROA.3726; *see also* ROA.3053-3054.

Third, although it is undisputed that Isto pleaded "no contest" to one count of violating La. R.S. 17:1801,[47] it was also undisputed on summary judgment – and Allstate Canada still does not dispute[48] – that none of the stipulated acts by Isto supporting that plea were directed at Max or caused Max's death. ROA.3725, 3727, 3732-3733; *see also* ROA.3056-3057.

Fourth, it was undisputed below – and Allstate Canada still does not dispute[49] – that Isto was not charged with a crime based on a failure to act, and Allstate Canada still has not identified any such crimes with

---

[46] Further, although Isto failed to care for, watch over, or summon or secure emergency medical care for Max after he became unconscious, Isto's deposition testimony that it never occurred to him that Max would need medical attention undermines any assertion that Isto's failures in that regard were intentional (rather than negligent) and aimed at causing Max "Bodily Injury." ROA.3728; *see also* ROA.3054. And, as Isto confirmed at trial under questioning from Allstate Canada's counsel, if he had thought someone was in danger during the "Bible Study," he would have said stop – "one hundred percent, yeah." ROA.5376.

[47] As discussed *infra*, the criminal hazing statute Allstate Canada quotes at length in its brief – La. R.S. 14:40.8 – has no bearing on this case because it: (1) was enacted *after* Max's death, and (2) was not the statute Isto was charged with and pleaded no contest to violating. ROA.3733.

[48] Allstate Br. at 28-29.

[49] *See generally* Allstate Br. at 28-31.

which Isto could have been charged for his failure to act on September 13-14, 2017, let alone a crime based on a failure to act that caused Max's death. ROA.3732; *see also* ROA.3052-3053.

Fifth, it was undisputed on summary judgment – and remains undisputed – that Max's death was not caused by any intentional or criminal acts or intentional or criminal failures to act by or at the direction of Isto. ROA.3725, 3727-3728. It was undisputed that Isto: never gave Max alcohol during the "lineup," including during the Greek alphabet phase when Max was singled out by other Phi Delt members; never told any of the other Phi Delt members to make Max drink alcohol; and confined his acts involving alcohol to pledges other than Max. ROA.3725, 3727; *see also* ROA.3056. Those facts remained undisputed after trial, which Allstate Canada's counsel himself conceded and used as a basis for moving for a directed verdict. ROA.5349-5350.[50] Indeed, contrary to Allstate Canada's assertion on appeal that Isto testified at trial "that he knew someone could be killed

---

[50] In addition, after the district court denied Allstate Canada's motion for a directed verdict, Isto again confirmed, under questioning from Allstate Canada's counsel, that he never made Max drink during the "Bible Study." ROA.5375.

or harmed as a result" of the "Bible Study" activities,[51] after the district court denied Allstate Canada's motion for a directed verdict, Isto testified, under questioning from Allstate Canada's counsel, that when he went to the fraternity house for "Bible Study," he never thought anyone was going to be hurt or any type of damage would be done to anyone. ROA.5372.

Thus, as Professor Knutsen explained in the uncontested and unchallenged declarations the Gruvers submitted on summary judgment:

> Under *Scalera* and *Eichmanis*, which would control in any case brought in the Ontario Superior Court of Justice . . . , because it is undisputed that Mr. Isto did not commit any intentional or criminal acts that caused Max's "Bodily Injury," did not intentionally or criminally fail to act in a way that caused Max's "Bodily Injury," and did not direct anyone else to intentionally or criminally act or fail to act in a way that caused Max's "Bodily Injury," the intentional or criminal acts exclusion in the Policy could not, as a matter of Canadian law, oust coverage and relieve Allstate Canada of its duty to indemnify Isto for his "Legal Liability" for Max's death.

---

[51] Allstate Br. at 29.

ROA.3057.

As in the district court, Allstate Canada has not offered any

authority – or undisputed facts – to contradict, let alone challenge,

Professor Knutsen's conclusions or the authority on which they are

based.

>    **4.    Under Canadian Law and the Undisputed Facts,
>            the "Abuse, Molestation, or Harassment"
>            Exclusion Does Not Apply**

Allstate Canada also failed to demonstrate the applicability of the

second exclusion on which it relies. That exclusion excludes from

coverage "sexual, physical, psychological or emotional abuse,

molestation or harassment, including corporal punishment by, at the

direction of, or with the knowledge of any person insured by this policy."

ROA.2972; ROA.3298. Under both Canadian and Louisiana law, and

the plain language of the Policy, Allstate Canada bore the burden of

showing that it was undisputed that the Gruvers' claims arise from

"sexual, physical, psychological or emotional abuse, molestation or

harassment." *See Francioni*, 2017 U.S. Dist. LEXIS 36977, at *7; *Ledcor*

*Constr. Ltd.*, 2016 SCC 37 (S.C.C.); *Progressive Homes Ltd.*, [2010] 2

S.C.R. 245 (S.C.C.).

Allstate Canada's apparent, though not entirely clear, argument on summary judgment was that that the type of hazing that contributed to Max's ultimately fatal intoxication unequivocally constituted "physical, psychological and/or emotional abuse and harassment." ROA.2691. On appeal, Allstate Canada more narrowly contends that "[u]nder the undisputed facts and evidence of this case, Ryan Isto's hazing conduct is an intentional form of harassment."[52] Both arguments are unsupported by the Policy language, the summary-judgment record, and Canadian law. And, even if it were undisputed that Isto's "hazing conduct" qualified as an "intentional form of harassment," Allstate Canada still had the burden of establishing that that harassment was the basis of the Gruvers' claims. Allstate Canada did not – and cannot – carry that burden.

As the Gruvers established below, the "abuse, molestation or harassment" exclusion is facially inapplicable to the undisputed summary-judgment facts. "Hazing" is not identified, defined, or expressly excluded from coverage in the Policy. *See generally* ROA.2965-2980; ROA.3290-3305. And, unlike "corporal punishment," "hazing" is

---

[52] Allstate Br. at 30.

not identified as a type or example of "abuse, molestation, or harassment" that would trigger that exclusion. ROA.2972; ROA.3298. Therefore, the "abuse, molestation, or harassment" exclusion, on its face, does not apply. Allstate Canada did not respond to this argument below, and it makes no attempt to address it on appeal.

In any event, that unchallenged conclusion comports with Canadian law. Canadian courts have made clear that, *except* for cases involving allegations of sexual assault or cases against parents or organizations for failing to stop ongoing behavior such as bullying or sexual abuse, "physical, psychological, or emotional abuse" exclusions are only triggered when, unlike here, the abusive behavior occurred over a period of time, as a practice or treatment of a person. *See Co-operators Gen Ins. Co. v. Kane*, 2017 BCSC 1720 (B.C.S.C.) at para. 78 ("abuse" in exclusion is an "unjust or corrupt practice" and "cruel and violent treatment of a person" as opposed to an injury, which is an "instance of being injured"); *Dube v. BCCA Ins. Corp.*, 2012 BCSC 1958 (B.C.S.C.) at para. 40 ("injury" and "abuse" have different meanings); *see also* ROA.3046. An abuse-based exclusion does not apply in cases, like this one, involving an isolated instance of physical injury or death.

*See id.*

Thus, under Canadian law, Allstate Canada cannot show, and has

not shown, that it is undisputed that the acts and failures to act that

caused Max's death, as a matter of law, triggered the "abuse,

molestation, or harassment" exclusion. *See Kane*, 2017 BCSC 1720 at

para. 78; *Dube,* 2012 BCSC 1958 at para. 40; *see also* ROA.3057-3058.

Allstate has again fundamentally failed to carry its burden of

establishing, through competent legal authority and undisputed facts,

that the "physical, psychological and/or emotional abuse and

harassment" exclusion applies as a matter of law.

### 5.    At a Minimum, the "Abuse, Molestation, or Harassment" Exclusion Is Ambiguous and Must Be Construed Against Allstate Canada

Even if the "abuse, molestation, or harassment" exclusion were

not facially inapplicable, it is inherently ambiguous. The terms "abuse,"

"molestation," and "harassment" are not defined in the Policy, and

Allstate Canada has not offered any evidence to establish the "ordinary

meaning" of those terms "as they would be understood by the average

person applying for insurance" in Canada (where the Policy was

issued),[53] or even the "common prevailing meaning" of those terms in Louisiana. *See Breland*, 50 So. 2d at 610 ("Unless ambiguous, words used in an insurance contract will be given their commonly prevailing meaning.") (citing La. Civ. Code art. 2074).

Moreover, the definition of "hazing" in La. R.S. 14:40.8 – which Allstate Canada quotes at length in its brief[54] – has no bearing on whether the hazing to which Max was subjected qualified as "abuse," "molestation," or "harassment" under the Policy, because, as the Gruvers and the district court detailed below, ROA.3687-3688; ROA.4451, La. R.S. 14:40.8 was not enacted until *after* – and in response to – Max's death. ROA.3733. La. R.S. 17:1801, which was in effect on September 13-14, 2017, made no reference to sexual, psychological, or emotional abuse, molestation or harassment, but only prohibited hazing "likely to cause bodily danger or physical

---

[53] *See* ROA. 3035 at ¶4 (Under general principles of insurance policy interpretation in Canada, "[w]ords used must be given their ordinary meaning as they would be understood by the average person applying for insurance, and not as they might be perceived by people versed in the niceties of insurance law.") (collecting cases).
[54] Allstate Br. at 28.

punishment[55] to any student or other person attending any" educational institution supported wholly or in part by public funds. 2017 La. R.S. 17:1801; ROA.3732.

Thus, because the "abuse, molestation or harassment" exclusion is ambiguous, under controlling Canadian law, that ambiguity must be construed against Allstate Canada, which has failed to establish – *or even argue on appeal* – that the acts and failures to act that were the cause of Max's death undisputedly qualify as "abuse," "molestation," or "harassment," under the Policy. *See, e.g.*, *Scalera*, [2000] 1 S.C.R. 551 at para. 70; *Breland*, 550 So. 2d at 610.

## III.    The District Court Conclusively Resolved The Issue Of Insurance Coverage In the Gruvers' Favor Before Trial

Allstate Canada's last appellate argument betrays a fundamental misunderstanding of the landscape of the case at trial. Because the district court had granted the Gruver's motion for summary judgment, and therefore already resolved the issue of insurance coverage in the

---

[55] Allstate Canada has not identified *any* record evidence that would support a finding that Max's death or the Gruvers' claims undisputedly arise from "physical punishment" inflicted on Max.

Gruvers' favor, ROA.4445,[56] the issue of coverage, including the "existence" of the Policy, was not one that the Gruvers needed to have addressed by the jury at trial. *See F.D.I.C. v. Massingill*, 24 F.3d 768, 774 (5th Cir. 1994) ("A partial summary judgment order," though not a final judgment, is "a pre-trial adjudication that certain issues are established for trial of the case."); *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) (partial summary judgment serves the purposes of narrowing, simplifying, and focusing the issues for trial).

Accordingly, the Gruvers did not need to prove at trial that the policy "exists," a "legal relationship" existed between Isto and Allstate Canada, or that the Policy provided "insurance coverage to Ryan Isto," as Allstate Canada contends.[57] Those issues had already been resolved, as a matter of law, in the Gruvers' favor on summary judgment. That meant, in turn, that Allstate Canada's motion for a directed verdict was

---

[56] The district court ruled, *inter alia*, that "general coverage exists under the unambiguous terms of the Policy after application of Canadian law," and the Gruvers' "claim for general negligence against Isto for his conduct on the night in question … falls squarely within the general terms of the Policy." ROA.4445.

[57] Allstate Br. at 31.

aimed at an issue that was never set to be heard by the jury in the first place.[58]

Allstate Canada is therefore wrong that "[w]ith no policy of Allstate Canada in the trial record, no coverage was proven."[59] The Gruvers undisputedly established such coverage, as a matter of law, before trial. The district court did not err[60] when it denied Allstate Canada's motion.

That conclusion is bolstered by Allstate Canada's concessions on appeal that the Policy "included Ryan Isto as an insured," and the "liability section of the policy obligates Allstate to pay all sums its insured becomes legally liable to pay as compensatory damages because

---

[58] Under the plain language of Federal Rule of Civil Procedure 50, Rule 50 motions are meant to target a "claim or defense" that "can be maintained or defeated only with a favorable finding on that issue" at trial. Fed. R. Civ. P. 50(a)(1)(B). Here, a "favorable finding" on the issue of insurance coverage was not necessary at trial, because the district court had already rendered a favorable finding on that issue in the Gruvers' favor on summary judgment.

[59] Allstate Br. a 32.

[60] Generally, an appellate court "reviews a denial of a motion for judgment as a matter of law de novo." *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 327 (5th Cir. 2015) (citing *Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007)).

of an unintentional bodily injury,[61] including death."[62] Those concessions are consistent with Allstate Canada's position on summary judgment.

For example, in the "S[t]atement of Uncontested Fact" that it filed with its motion for summary judgment, Allstate Canada stated that it was uncontested that "[a]t the time of the incident, Ryan was insured through an Allstate Tenant Policy of insurance issued to his parents, Mark and Ann Isto." ROA.2681.[63] Allstate Canada also admitted, through an affidavit it submitted from one of its employees, that the Policy was "in full force and effect on the relevant date of the alleged loss of September 13,[] 2017 and September 14,[] 2017." ROA.2949; *see also* ROA.2687 ("At the time of incident, Allstate had in effect a Tenant Insurance, policy number 151409848, that provided coverage to Ryan's parents, Mark and Ann Isto. Ryan was an additional insured under the policy.").

Additionally, Allstate Canada did not contest in the district court,

---

[61] As discussed above, Allstate Canada's indemnity obligations under the Policy extend beyond "unintentional bodily injury," as Allstate Canada now asserts.

[62] Allstate Br. at 7.

[63] The Gruvers did not dispute that factual contention. ROA.3718.

and does not attempt to dispute on appeal, that: (1) Max's death qualifies as "Bodily Injury" under the Policy, ROA.3735; (2) Isto was insured for all "Legal Liability arising out of" his "personal actions anywhere in the world," ROA.3734, 3736; or (3) absent an applicable policy exclusion, Allstate Canada would be obligated to "pay all sums which" Isto "become[s] legally liable to pay as compensatory damages because of unintentional Bodily Injury or Property Damage." ROA.3736.

Moreover, even if Allstate Canada now wanted to retreat from the concessions in made in the district court, it waived the right to do so by failing to oppose the Gruvers' motion for partial summary judgment, or any of the arguments, undisputed facts, or legal authority the Gruvers offered in support of their motion. ROA.2989-2990, 4417.[64] It is well-established that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be

---

[64] As the district court explained: "Allstate Canada failed to respond to Plaintiffs' motion; it did not file a memorandum in opposition controverting Plaintiffs' legal arguments, and it did not file a Statement of Disputed Facts as required by the Local Rules." ROA.4426. Indeed, as the district court noted in its summary judgment ruling, "[a]s stated repeatedly, Allstate Canada has not responded to any legal arguments or jurisprudence offered by Plaintiffs nor has it contradicted the Plaintiffs' statement of undisputed facts." ROA.4439.

considered or raised on appeal." *Vaughner v. Pulito*, 804 F. 2d 873, 877 n.2 (5th Cir. 1986); *see also Cazamias v. Devon Energy Prod. Co., L.P.*, 661 F. App'x 817, 819 (5th Cir. 2016) (appellants' "substantive arguments on appeal seeking reversal of the district court's grant of summary judgment" on appellee's counterclaims were waived because "[a]ppellants raised no arguments in opposition to summary judgment in the district court").

Allstate Canada did not assert any reasons below for why the district court should not have granted summary judgment to the Gruvers on the issue of insurance coverage. As a result, Allstate Canada cannot now challenge the district court's definitive and dispositive ruling on appeal.

## IV. The District Court's Partial Dismissal Order Did Not Extinguish Isto's "Personal Liability"

In one final Hail Mary, Allstate Canada argues for the first time and without any legal or factual support that "the damages sought by plaintiffs cannot be rendered against Ryan Isto because the trial court's July 1, 2020, partial dismissal order extinguished Ryan Isto's personal

liability for damages in the litigation."[65] Allstate Canada waived that argument by not raising it below. *See Binh Hoa Le*, 990 F.3d at 414 ("new theories not raised before the district court may not be advanced for the first time on appeal" when seeking review of a summary judgment ruling). But even if Allstate Canada could properly raise this argument, it would be unavailing.

The Policy defines "Personal Liability" as "Legal Liability arising out of your personal actions anywhere in the world." ROA.2971; ROA.3297. "Legal Liability," in turn, is defined as "responsibility which courts recognize and enforce between parties who sue one another." ROA.2971; ROA.3297.

Louisiana courts have made it clear that even after entering into a *Gasquet* release, "[a]n insured-tortfeasor can be 'legally liable' for the victim's damages, even though he cannot be cast in judgment due to his release from liability." *Sumrall*, 887 So. 2d at 79. Thus, Isto's "Personal Liability" and "Legal Liability" remained issues still to be determined after the district court's July 1, 2020 partial dismissal order, which expressly left Isto in the case as a nominal defendant for the purposes of

---

[65] Allstate Br. at 32.

determining his legal liability and any applicable insurance coverage.
ROA.2154-2155. The district court resolved the issue of insurance
coverage in the Gruvers' favor on summary judgment, ROA.4417-4453,
and the jury resolved the issues of Isto's legal liability in the Gruvers'
favor at trial. ROA.4792-4794.

## CONCLUSION

For all of the reasons set forth herein, this Court should affirm the
Judgment and thorough and well-reasoned rulings of the district court.

Dated: January 12, 2024                  Respectfully submitted,

/s/ Jonathon N. Fazzola
Jonathon N. Fazzola
THE FIERBERG NATIONAL LAW
GROUP, PLLC
201 East 17th Street, Suite A
Traverse City, MI  49684
Telephone: (231) 933-0180
jfazzola@tfnlgroup.com

Donald J. Cazayoux, Jr. (#20742)
J. Lane Ewing, Jr. (#29854)
CAZAYOUX EWING, LLC
257 Maximilian Street
Baton Rouge, Louisiana 70802
Telephone: (225) 650-7400
Email: don@cazayouzewing.com
Email: lane@cazayouxewing.com

*Counsel for Plaintiffs-Appellees*
*Stephen M. Gruver and Rae Ann*

*Gruver, individually and on
behalf of Maxwell R. Gruver*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Notice of this filing will be sent to all parties who participate in electronic filing by operation of the court's electronic filing system. In addition, on January 12, 2024, two copies of the foregoing were served on counsel of record for Defendant-Appellee at the below listed address by depositing the copies in the United States Mail with first class postage prepaid:

> **DONOVAN & LAWLER, APLC**
> JAMES L. DONOVAN, JR.
> PAUL M. DONOVAN
> 4640 Rye Street
> Metairie, Louisiana 70006

Dated: January 12, 2024

/s/ Jonathon N. Fazzola

Jonathon N. Fazzola
THE FIERBERG NATIONAL LAW GROUP, PLLC
201 East 17th Street, Suite A
Traverse City, MI  49684
Telephone: (231) 933-0180
jfazzola@tfnlgroup.com

*Counsel for Plaintiffs-Appellees Stephen M. Gruver and Rae Ann Gruver, individually and on behalf of Maxwell R. Gruver*

## Certificate of Compliance

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   [X]   this document contains 12,700 words, or

   [ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   [X]   this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Century Schoolbook font, or

   [ ]   this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

Dated:  January 12, 2024

/s/ Jonathon N. Fazzola
Jonathon N. Fazzola
THE FIERBERG NATIONAL LAW
GROUP, PLLC
201 East 17th Street, Suite A
Traverse City, MI  49684
Telephone: (231) 933-0180
jfazzola@tfnlgroup.com

*Counsel for Plaintiffs-Appellees
Stephen M. Gruver and Rae Ann
Gruver, individually and on
behalf of Maxwell R. Gruver*